# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

| | |
|---|---|
| MELISSA NELSON, individually and on behalf of all others similarly situated, | SUMMONS |
| Plaintiff, | Index No. |
| -against- | Purchased on    August 15, 2024 |
| ARBY'S RESTAURANT GROUP INC., | |
| Defendant. | |

To the above-named Defendant:

**PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the Complaint of the Plaintiff and to serve a copy of your Answer on the Plaintiff at the attorney address indicated below within 20 days after service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the Complaint.

Dated:    August 15, 2024

/s/Spencer Sheehan
Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

Plaintiff Nelson designates Queens County as place of trial. The basis of venue is:

☒    Plaintiff Nelson's residence, 6125 Madison St, Ridgewood NY 11385

☐    Where a substantial part of the events or omissions giving rise to the claim occurred

☐    Other

# SUPREME COURT OF THE STATE OF NEW YORK
# COUNTY OF QUEENS

| | |
|---|---|
| MELISSA NELSON, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| ARBY'S RESTAURANT GROUP INC., | Jury Trial Demanded |
| Defendant. | |

Melissa Nelson ("Plaintiff"), through Counsel, alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. The last five years have seen historic increases in inflation, with the prices of inputs for consumer goods rising dramatically.

2. In theory, this rise in costs will be borne equally by companies, who may either pass the higher costs on to consumers, and/or reduce the quantities and amounts they receive.

3. This latter practice has been dubbed "shrinkflation," denoting smaller quantities or amounts, but with proportionally lower prices.

4. One step removed from "shrinkflation" is "greedflation," where a company raises prices beyond what is necessary to account for rising prices, selling what appears to be similar quantities or amounts of product to the public.

5. According to John Gourville, a Harvard professor, because consumers "react[] greatly to periodic changes in price, but not at all to periodic (yet systematic) reductions in quantity," this practice can be detrimental to their economic well-being.

6. According to one United States Senator, "greedflation" is a source of corporate profits at the direct expense of consumers.[1]

7. Other elected officials have introduced the Shrinkflation Prevention Act of 2024, which would prohibit downsizing or reducing the amount of consumer products, without commensurate reductions in pricing.

8. These proposals are consistent with measures taken in other countries to prevent consumers from getting "shortchanged."

9. For example, France now requires that companies whose product has been downsized, without proportional price reductions, to clearly indicate this.

10. South Korea and Hungary have enacted similar laws, requiring prominent and conspicuous disclosure for when reductions in quantity or amount are not accompanied by reductions in price.

11. To maintain and/or increase profits, and/or reduce costs, at the expense of consumers, Arby's Restaurant Group Inc. ("Defendant"), based on information

---

[1] A Greedflation Report: Stuffing Their Pockets – How Big Food and Agriculture Businesses are Making Your Holiday Meals More Expensive, A Special Report on Greedflation – How Corporations Are Making Record Profits on the Back of American Families, November 2023.

2

and belief, and investigation of Counsel, (1) has re-sized its french fries, so that the kids size was now "small," shown below, the small became "medium," and the medium became "large," (2) without any corresponding reduction in price, and/or (3) without conspicuous, or any disclosure, to its customers, and such allegations are likely to have support, following the opportunity for reasonable discovery.



12. This "downsizing" was first noticed by a TikTok user, who ordered a large beverage, but reported receiving one that corresponded to what was previously "medium."

13. Another Arby's customer took to the social media website, Reddit, recounting how she was told by an employee that "Arby's corporate is downsizing all the size portions."

14. These rumors can be confirmed by Arby's website, when comparing the

3

2022 version of its nutritional information corresponding to the Kids size, to the 2024 version of the Small size for its Curly Fries.

[Arby's nutritional information tables comparing 2022 Kids/Jr Curly Fries to 2024 Small Curly Fries, with highlighted values showing 250 calories, 120 calories from fat, 13g fat, and 3g protein matching between the two]

15. This indicates that the nutritional vales for the 2022 Kids size Curly Fries and the 2024 Small size Curly Fries are close to identical, with both containing 250 calories, 120 calories from fat, thirteen grams of fat, three grams of fiber and protein, among other nutrients.

16. The only nutrient value which differs is the amount of sodium, with the 2024 "Small" size containing 570 mg, compared to 2022 Kids size, containing 560 mg.

17. Nowhere did Arby's inform customers of this "downsizing," as its

4

current menu boards do not indicate the "downsizing," with the "Kids" version no longer offered as an option.





18.  Arby's deceptively continues to sell its fries and beverages in smaller sizes which are now substantially smaller than the old sizes.

19.  The result is that the increase in prices may never be noticed by Arby's purchasers, who may be left only with a strange feeling, short of satiety, even though this was due to the subject downsizing.

5

20. As a result of the practices identified, Arby's consumers buying the french fries and beverages will believe they are getting the same quantity and/or amount as they previously were getting, even though this would be false.

## JURISDICTION

21. Plaintiff Nelson is a citizen and resident of New York.

22. The Court has jurisdiction over Defendant because it transacts business within New York and sells french fries and beverages to consumers within New York, through its sixty-seven (67) Arby's locations, and/or online, to citizens of this State.

23. Defendant transacts business in New York, through the sale of french fries and beverages to consumers within New York, through its sixty-seven (67) Arby's locations, and/or online, to citizens of this State.

24. Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

25. Defendant has committed tortious acts outside this State by labeling, packaging, representing, and selling its downsized french fries and beverages in a manner which causes injury to consumers within this State, by misleading them as to its contents, production practices, type, origins, quantity, relative quantity, relative amount, and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell french fries and beverages to consumers

6

in this State, and/or derives substantial revenue from the sale of the Product in this State.

26. Defendant has committed tortious acts outside this State by labeling, marketing, omitting, packaging, and/or selling french fries and beverages in a manner which causes injury to consumers within this State by misleading them as to its relative contents, relative amounts, and relative prices, through causing them to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

27. Plaintiff Nelson resides in Queens County, New York.

28. Venue is in this Court because Plaintiff Nelson's residence is in Queens County.

29. Venue is in this Court because a substantial and/or entire part of the events or omissions giving rise to Plaintiff Nelson's claims occurred in Queens County.

30. This is because Plaintiff Nelson purchased and/or consumed french fries and/or beverages from Arby's, in Queens and/or other counties, in reliance on the expectations that she was paying for the same amount of food and beverages, and/or learned the practices described here were deceptive and/or misleading in Queens

County.

## PARTIES

31. Plaintiff Nelson is a citizen of Queens County, New York.

32. Defendant Arby's Restaurant Group Inc. operates the Arby's chain of fast food restaurants.

33. Plaintiff is like many Arby's customers, who came to rely on its consistent sizes of beverages and fries to deliver a fixed amount of liquid and food, at relatively consistent prices over time, in their past purchases at Arby's.

34. Plaintiff is like many Arby's purchasers, who was required and/or could not avoid viewing the menu boards when making choices about what size beverages and french fries to buy.

35. Plaintiff is like many Arby's customers, who came to rely on, and expect, consistent sizes for relatively similar prices for french fries and beverages.

36. Plaintiff purchased french fries and/or beverages between July 2021 and July 2024, at the previous sizes and in the updated "downsized" versions, at Arby's locations in this State.

37. Plaintiff did not expect to receive a smaller amount of liquid and/or food when she ordered the same sizes of beverages and/or french fries as she had previously ordered.

38. Plaintiff paid relatively more for proportionally smaller sizes of french

8

fries and/or beverages than she would have, had she known she was paying more but getting less.

## CLASS ALLEGATIONS

39. Plaintiff seeks to represent the following class:

> All persons in New York who purchased french fries and beverages at Arby's in New York, who had previously purchased french fries and beverages before the sizes were adjusted downwards, during the statutes of limitations for each cause of action alleged.

40. Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, members, and attorneys, and immediate family members of any of the foregoing persons, (b) governmental entities, (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

41. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

42. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

43. Plaintiff is an adequate representative because her interests do not conflict with other members.

9

44. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

45. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

46. The class is sufficiently numerous, with over one hundred members, because thousands of New Yorkers have visited, and continue to visit Arby's daily, at its sixty-seven (67) locations throughout the State, buying its french fries and/or beverages at its prior sizes and its updated smaller sizes.

47. Plaintiff's Counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
### General Business Law ("GBL") §§ 349 and 350

48. To the extent required, this section incorporates by reference any other paragraphs, as necessary.

49. The purpose of the GBL is to protect consumers against unfair and deceptive practices.

50. The GBL was intentionally broad, to encompass methods of deception which could not be conceived of at the time it was enacted.

51. This includes making state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection.

52. The GBL considers false advertising, unfair acts, and deceptive practices in the conduct of any trade or commerce to be unlawful.

53. Violations of the GBL can be based on other laws and standards related to consumer deception.

54. Violations of the GBL can be based on the principles of the Federal Trade Commission Act ("FTC Act") and FTC decisions with respect to those principles. 15 U.S.C. § 45 *et seq*.

55. A GBL violation can occur whenever any rules promulgated pursuant to the FTC Act, 15 U.S.C. § 41 *et seq*., are violated.

56. A GBL violation can occur whenever the standards of unfairness and deception set forth and interpreted by the FTC or the federal courts relating to the FTC Act are violated.

57. A GBL violation can be based on public policy, established through statutes, laws, or regulations.

58. A GBL violation can occur whenever any law, statute, rule, regulation, or ordinance, which proscribes unfair, deceptive, or unconscionable acts or practices is violated.

59. In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations made or suggested by words and images, "but also the extent to which [it] fails to

11

reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1).

60. In considering whether marketing is misleading, it is required to consider not only representations made or suggested by statements, images, and/or design, but also the extent to which it fails to prominently and conspicuously reveal facts relative to the proportions or absence of certain components, quantity, relative quantity, ingredients, and/or other relevant facts, which are of material interest to consumers.

61. Defendant's false and deceptive representations and omissions with respect to the updated, "downsized" versions of its french fries and beverages, are material in that they are likely to influence consumer purchasing decisions.

62. The downsizing of consistent sizes and amounts of regularly purchased products, is of material interest to consumers, because it impacts how far their money can go, and they are accustomed to, and/or expect, to receive the same amounts of food and beverages, when they order the same sizes, especially when there is no disclosure of any changes.

63. The labeling of the Product violates laws, statutes, rules and regulations which proscribe unfair, deceptive, or unconscionable acts or practices, thereby violating the GBL.

64. Defendant knew, or should have known, that by re-labeling the sizes with substantially less quantity of food and beverage, consumers would be misled into

purchasing a substantially lesser quantity at prices that are not proportionally reduced.

65. Plaintiff paid more than she would have paid, had she known she was buying a smaller quantity of french fries and beverages, but not at a proportionally lower price.

66. Plaintiff seeks to recover for economic injury and/or loss she sustained based on the re-labeling of the sizes for the french fries and beverages, when expecting consistent amounts of each.

67. Plaintiff will produce evidence showing how she and consumers paid more than they would have paid for french fries and beverages, relying on Defendant's representations, omissions, packaging, and/or labeling, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis, and/or other advanced methodologies.

68. As a result of Defendant's misrepresentations and omissions, Plaintiff was injured and suffered damages by paying more than she would have, had she known she was buying smaller quantities which were not sold at proportionally lower prices.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

13

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as Counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated: August 15, 2024

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel (516) 268-7080
Fax (516) 234-7800
spencer@spencersheehan.com

Notice of Lead Counsel Designation:

Lead Counsel for Plaintiff

Spencer Sheehan

Sheehan & Associates P.C.

Counsel for Plaintiff

14

## Certificate of Service

I certify that on August 15, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | Electronic Filing | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☒ | ☐ | ☐ | ☐ |
| Court | ☒ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

| | |
|---|---|
| MELISSA NELSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>ARBY'S RESTAURANT GROUP INC.,<br><br>Defendant. | Index No. 716912/2024<br><br>**STIPULATION OF SERVICE OF PROCESS AND EXTENSION OF TIME TO RESPOND TO COMPLAINT** |

**WHEREAS** Defendant, Arby's Restaurant Group Inc. ("Defendant") is represented by Jason Rosenberg, Esq., Andrew Phillips, Esq., Alan Pryor, Esq., of the law offices of Alston & Bird LLP and has authorized the foregoing to accept service of process in this matter on its behalf.

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, that:

1. Defendant hereby acknowledges that Plaintiff, Melissa Nelson ("Plaintiff"), represented by Spencer Sheehan, of the law office Sheehan & Associates, P.C., has properly served it with process in New York by delivering a copy of the Summons, Complaint, and Notice of Electronic filing to its attorney, Andrew Phillips, on **November 18, 2024.**

2. The time for Defendant to answer, move, or otherwise respond to the Complaint of Plaintiff in the above-captioned matter is hereby extended to and including **December 30, 2024.**

3. Electronic signatures on this stipulation shall be treated as original signatures for the purposes of filing this stipulation.

*[Signatures on the following page]*

Dated: Nassau, New York
November 19, 2024

| SHEEHAN & ASSOCIATES, P.C. | ALSTON & BIRD LLP |
|---|---|
| /s/ Spencer Sheehan | /s/ *Alan Frank Pryor* |
| Spencer Sheehan, Esq. | Jason D. Rosenberg, Esq. |
| 60 Cuttermill Rd., Ste. 412 | Andrew Phillips, Esq. |
| Great Neck, NY 11021 | Alan F. Pryor, Esq. |
| Tel: (516) 268-7080 | 1201 W Peachtree St, Ste 4900 |
| spencer@spencersheehan.com | Atlanta, GA 30309 |
| | Tel: (404) 881-7183 |
| | jason.rosenberg@alston.com |
| | andrew.phillips@alston.com |
| | alan.pryor@alston.com |
| *Attorneys for Plaintiff* | *Attorney for Defendant* |